In the Matter of Thajuana D.
MILLER, Respondent.

No. 83–841.

District of Columbia Court of Appeals.

Argued March 29, 1988.
Decided Jan. 24, 1989.

Robert Fabrikant, with whom M. Suzanne Riedman, Washington, D.C., was on the brief, for respondent.

Michael S. Frisch, Asst. Bar Counsel, with whom Thomas E. Flynn, Jr., Bar Counsel, Portsmouth, N.H., was on the brief, for the Office of Bar Counsel.

Joan L. Goldfrank, Executive Atty., for Bd. on Professional Responsibility.

Before MACK, NEWMAN and STEADMAN, Associate Judges.

MACK, Associate Judge:

On this appeal the basic issue is whether a sanction of one year's suspension recommended by the Board on Professional Responsibility ("Board") for a violation by respondent of Disciplinary Rule 1–102(A)(4) (dishonesty) is consistent with dispositions for comparable conduct and otherwise warranted.[1] Encompassed within that issue are questions of whether the Board properly found that respondent, a thirty-three (33) year old black female attorney, failed to prove the necessary nexus between alcoholism and the misconduct, and whether the Board improperly failed to consider mitigating factors going to respondent's perception, at least, of racism and sexual harassment. We conclude, after reviewing a record showing undisputed evidence of alcoholism, *see In re Kersey*, 520 A.2d 321 (D.C.1987), as well as testimony as to events further fostering emotional instability and psychological trauma, that the Board should have given weight to these combined factors as mitigating. We therefore hold that the sanction recommended by the Board is inappropriate.[2]

1. Respondent Miller does not contend that her conduct does not violate DR 1–102(A)(4). Thus, we need not and do not decide whether the term "dishonesty" as used in DR 1–102(A)(4) is unconstitutionally vague or otherwise legally flawed.

2. Bar Counsel, in briefing and oral argument before this court, has voiced his disagreement

with the Board's recommended sanction. He has suggested that the appropriate sanction is a ninety-day suspension, execution of which should be stayed, and that respondent should be placed on probation for a period of two years conditioned upon (1) abstinence from alcohol and (2) continuation of psychological treatment.

## I.

Ms. Thajuana Miller, with an exemplary record of accomplishment as a lawyer, began work as an associate at a local law firm on June 1, 1980. It was not to be a harmonious or successful association. According to Miller's testimony before the Hearing Committee of the Board on Professional Responsibility, on her first day of work, the secretary who was assigned to work for her, refused. When Ms. Miller inquired as to whether her race had been the cause of the secretary's refusal, Ms. Miller was reassured that the secretary simply did not want to work for a woman.

Things quickly went downhill. Miller was assigned to a huge litigation matter and she came to feel that the client was contemptuous and that her assignment was made with an undercurrent of racism. There was testimony that racist jokes were told in the firm and by the client and that the firm was less than sensitive to Ms. Miller's discomfort. There was also further testimony that Ms. Miller was informed by a secretary that she should "be careful" and that she was getting a reputation for being "uncooperative." Ms. Miller turned to alcohol; she later attempted suicide. In March, 1981, Miller received an unsatisfactory rating from the firm and six months later she left to begin work for a government agency.

On October 15, 1981, twenty days after she had left the employ of the law firm, Miller left work early to keep a doctor's appointment. The doctor's office was located near the firm's offices and Miller decided to stop by the firm to see a friend. She knew that most of the attorneys would not be there; there was a firm dinner that evening. She testified that she expected to find her friend, an associate who had recently decided to leave the firm and who had expressed to her his intention not to attend the dinner. An acquaintance at the firm admitted her to the offices, but she was unable to find her friend. She worked in the library and ate dinner.

Miller testified that as she sat in the firm's library, she began to think about her experiences over the last several months and to worry about what might be in her personnel file. She decided to investigate. She went first to her personnel file and discovered that the file contained only blank evaluation forms. She then went to the office of the partner who had supervised her work at the firm. En route, she took a pair of plastic gloves from the copy room. Once in the partner's office, she took a key from his desk, unlocked his credenza and searched his files. A surprised partner walked into his office at that moment to find a surprised ex-associate kneeling at his open credenza. He asked what she was doing. Miller responded that she was looking for her file. She handed the partner his key, walked out of his office with her briefcase and hid in a closet for about an hour to avoid meeting him in the elevator.

On February 24, 1982, Bar Counsel petitioned this case charging Miller with violating DR 1–102(A)(4) (dishonesty) of the Code on Professional Responsibility. The case was heard before the Hearing Committee which found that Miller had indeed violated the dishonesty provision of the Code. The Board on Professional Responsibility agreed and recommended that the court suspend Miller for two years.

On March 19, 1984, this court remanded the case to the Board for further hearings, concluding that the hearing had been tainted as a result of *ex parte* communications between the Chair of the Hearing Committee and the Assistant Bar Counsel assigned to the case. The Board thereafter remanded the case to a new hearing committee for a de novo hearing.

A second Hearing Committee held a hearing on July 25 and 26, 1984. The Committee found Miller guilty of violating DR 1–102(A)(4) and recommended that she be suspended from practice for a year and a day.[3] Miller then filed a motion for re-

---

**3.** In its post-hearing brief, Bar Counsel had also charged Miller with two violations of DR 1–102(A)(3) (conduct involving moral turpitude)

for intending to commit a criminal offense at the time that she entered the law offices and by making material misrepresentations of fact

mand in order to present evidence regarding alcoholism. The motion was granted.

On remand, Miller presented evidence from a former colleague, her husband and her treating psychologist as to her alcoholism. After Miller submitted an affidavit from her treating alcoholism counselor, Bar Counsel conceded that Miller was an alcoholic and that her alcoholism had substantially caused her unethical behavior.

Notwithstanding Bar Counsel's concession, the Hearing Committee concluded that the "evidence presented does not materially alter the previously submitted report and recommendation." The Committee found that Miller was an active alcoholic at the time of her misconduct but that there was insufficient evidence of a causal connection between her alcoholism and her misconduct.

The Board again remanded the case, asking the Committee to explain its reasons for rejecting the stipulation between the parties as to causation. The Committee heard testimony from an expert on alcoholism but remained convinced that the causal connection between Miller's alcoholism and her misconduct had not been sufficiently established.

The Board agreed with the Hearing Committee's conclusions: respondent violated DR 1–102(A)(4); she was an alcoholic; and causation (the requisite nexus between alcoholism and the misconduct) had not been proven. The Board thus did not consider alcoholism in mitigation. It did, however, consider the delay in disciplinary proceedings in mitigation and recommended that the court suspend Miller for one year.

Miller, in appearing before this court, argues that suspension from practice is a disproportionately severe penalty in light of all the circumstances present here. She argues that her perceptions of sexism and racism should have been considered in mitigation. She also argues that she has adequately shown that her alcoholism caused her misconduct and thus should be considered in mitigation. Further, she contends that the sanction recommended is excessive in light of sanctions imposed in other disciplinary cases.

## II.

In *In re Kersey, supra,* this court held that alcoholism can be a mitigating circumstance in determining attorney discipline provided there is adequate proof of causality between the alcoholism and the underlying misconduct. The court held that to be considered in mitigation, the alcoholism must be a "but for" cause of the charged misconduct. *Id.* at 327.

In *Kersey,* respondent had been charged with twenty-four violations of the Code on Professional Responsibility. There was no dispute that Kersey was an alcoholic. *Id.* at 325. This court was also convinced that there was a close nexus between the alcoholism and his misconduct: "[b]ut for Kersey's alcoholism, his misconduct would not have occurred." *Id.* at 327 (footnote omitted). But the court recognized the difficulty of proof in such cases. "While we believe that it is an impossible burden to prove that Kersey's alcoholism caused each and every disciplinary violation, the fact that alcoholism has a severe effect on human physiology and behavior, along with the record evidence of Kersey's own behavior, establish that Kersey's professional conduct was *substantially affected* by his alcoholism." *Id.* at 326 (emphasis added). This court noted that Kersey had presented expert testimony describing his behavior as "delusional," and his judgment as "poor." *Id.* at 326. Kersey also testified that many of his writings during this period were "irrational and nonsensical." *Id.* at 326–27.

■ Our reading of *Kersey* convinces us that where an attorney claims alcoholism as a mitigating circumstance in a disciplinary proceeding, the attorney has the burden of proof on that issue and the attorney must show that the alcoholism "substantially affected" the charged misconduct by a preponderance of the evidence.[4] How the

---

while under oath. The Committee did not find Miller guilty of these charges.

**4.** The Hearing Committee did not offer an opinion as to whether the standard of proof should be by a preponderance of the evidence or by

nexus between misconduct and alcoholism may be demonstrated—by the nature of the misconduct itself, *i.e.*, misappropriation to buy alcohol or neglect resulting from alcohol-induced stupor; by evidence concerning the respondent's behavior contemporaneously with the misconduct, *i.e.*, grossly delusional explanations for improper actions or a pattern of otherwise unexplainable behavior; or, in the proper case, the respondent's own testimony linking the two—will vary from case to case.

█ In this case, there is no real dispute that Ms. Miller was an alcoholic at the time of the incident which led to these proceedings. Both she and her husband testified that she was consuming large quantities of alcohol on a daily basis. Her therapist, a clinical psychologist, also testified unequivocally that she was an alcoholic. Her alcoholism treatment counselor testified that Ms. Miller was a third stage alcoholic and that her behavior was consistent with third stage alcoholism. Moreover, there was compelling testimony that the misconduct was inconsistent with her previous professional behavior and her professed moral values. Against this backdrop Bar Counsel found that Ms. Miller was an alcoholic at the time of her misconduct[5] and the Board reached the same conclusion. The pivotal issue, therefore, is whether Ms. Miller adequately demonstrated a connection between her alcoholism and her misconduct.

We noted in *Kersey* that alcohol acts as a depressant. *Id.* at 326. "Alcoholics suffer from feelings of futility, and they exhibit signs of reality distortion, such as 'paranoia, aggressiveness, extreme lack of confidence and an inability to accept criticism, or to see how their behavior is affecting others.'" *Id.* (footnote and citation omitted). We also noted that the judgment of alcoholics is impaired. *Id.* Here, recognizing alcoholism's "severe effect on human behavior and psychology," along with the record evidence of Miller's behavior (so foreign to that of her previous history of behavior), we would be blinking at reality to conclude that alcoholism did not "substantially affect" her professional conduct.

Moreover, it is reasonable to conclude that alcoholism was also bound up with her expressed perceptions of racism and sexual harassment. There is ample evidence that Ms. Miller perceived herself to be the subject of racism and sexual harassment. And while there was testimony suggesting that there was a rational basis for these perceptions, we need not concern ourselves with whether such perceptions were justified or not. Unfortunately, even in 1989, racism and sexism are facts of life. While perceptions, rational or irrational, are no defense to a charge of professional misconduct, there is every reason for strict scrutiny, in the consideration of mitigating factors, of the circumstances leading to such perceptions. We are convinced that the Board should have considered these circumstances in mitigation of sanction.

### III.

█ Having concluded that the Board should have considered respondent's alcoholism and perceptions of racism and sexual harassment as mitigating factors, we necessarily conclude that the recommended sanction is excessive. This is especially true in light of sanctions in similar cases.

The starting point in examining the appropriateness of the recommended sanction is Section 7(3) of Bar Rule XI of this court which requires the court to "adopt the rec-

---

clear and convincing evidence. The Board avoids this question by concluding that even if the lower standard is applicable, respondent has failed to meet this burden.

Other courts have adopted the higher standard. *See Attorney Grievance Comm'n v. Burka*, 292 Md. 221, 438 A.2d 514 (1981); *Petition of Johnson*, 322 N.W.2d 616 (Minn.1982). The Board also adopted this standard in its Report and Recommendation in *In re Kersey*, D.N. 275–80, Bd.Rpt., June 6, 1985. Notwithstanding this, we believe that the preponderance of evidence standard is the more appropriate standard. As this court recognized in *Kersey*, difficult problems of proof are presented here. Given our view that the purpose of discipline in cases involving alcoholism should be to rehabilitate not punish, we think the lower standard is more appropriate.

5. Bar Counsel also concluded that Ms. Miller's alcoholism was a "but for" cause of her misconduct.

ommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise be unwarranted." This court has also explained that "[a]lthough the rule makes ·clear that the choice of a sanction rests with the court, not the Board, it also directs us to give considerable deference to the Board's recommendation." *In re Hutchinson*, 534 A.2d 919, 924 (D.C.1987) (en banc).

With all due deference to the Board's recommendation, we are convinced that the sanction recommended in this case is "unwarranted." We recognize the diligence with which the Board has routinely considered "the nature of the violation, the mitigating and aggravating factors, and the need to protect the public and the legal profession." *In re Haupt*, 422 A.2d 768, 771 (D.C.1980). As to "the nature of the violation," we concur in the Board's assessment that the conduct here was quite serious; to unlock cabinets and search confidential files is behavior inappropriate to a member of the legal profession. *See* ABA Standards for Imposing Lawyer Sanction, Section 5.1 (1986). However, in light of other cases of lawyer misconduct, we conclude that a one-year suspension is too severe.

Thus in *In re Reback*, 513 A.2d 226 (D.C. 1986), this court ordered a six-month suspension for two attorneys who failed to put a divorce complaint at issue, allowed a second divorce complaint to be dismissed, and then attempted to conceal this from the client by forging the client's name on a subsequent complaint. The court noted that "respondent's dishonesty prejudiced the administration of justice itself." *Id.* at 232. And in *In re Thompson*, 538 A.2d 247 (D.C.1987), the court ordered respondent suspended from the practice of law for one year where the attorney gave false statements to the Immigration and Naturalization Service in support of his client's application for permanent resident alien status.

Here appellant's actions did not "prejudice the administration of justice" nor "subvert the judicial process." Indeed, appellant's actions were not even related to the practice of law.

As to "the mitigating and aggravating factors," we may leave aside the question of deference to the Board's finding of no causation between alcoholism and misconduct, since it is clear that the evidence of third stage alcoholism coupled with perceptions of racism and sexism leading to aberrant behavior makes this case closely analogous to *In re Kent*, 467 A.2d 982 (D.C.1983). Like Kent's, respondent's act of dishonesty was a single isolated incident resulting from extreme stress. In *Kent*, the attorney, suffering from severe transient emotional distress, entered a department store and proceeded to grab store merchandise and stuff it into her purse. She ultimately pled guilty to a charge of taking property without right. The Board recommended a year-and-a-day suspension. This court rejected that recommendation: "We regard the year-and-a-day suspension as disproportionate in light of the particular facts of this case. The record demonstrates that before the incident that forms the basis for these proceedings, respondent had a spotless professional record and received commendations from her superiors.... Respondent's single incident of dishonesty was completely unrelated to her practice of law." *Id.* at 985. Accordingly, this court ordered Kent suspended from the practice of law for thirty (30) days.

Similarly here, we conclude that the appropriate sanction should be a suspension for thirty days.[6] Respondent's conduct was not motivated by a desire for personal economic gain. And while respondent's behavior was a serious breach of the Canons of Ethics, it was no more serious than the behavior in *Reback;* indeed, it does not involve a subversion of the judicial process. Like *Kent*, respondent's behavior was an isolated incident and must be viewed in the

6. This also seems to us to be an appropriate sanction in light of *In re Austern*, 524 A.2d 680 (D.C.1987), where this court publicly censured Austern for his violation of DR 1–102(A)(4) (dishonesty) and DR 7–102(A)(3) (assisting client to commit fraud). Austern had assisted a client in committing a fraud where he proceeded with a real estate transaction despite knowing that there were insufficient funds in the escrow account.

context of the serious mental and emotional stress under which she operated in coping with acute alcoholism and the perception of sexual and racial harassment.

Finally, as to "the need to protect the public and the profession" we think the delay (and events attendant thereto) in this case warrants a less severe sanction than that recommended. Six years have elapsed since respondent's conduct at issue here. In those six years, respondent has practiced law without incident. As the Board concedes, this fact "gives some confidence that [respondent] is more sensitive to her ethical obligations and is not likely to repeat her misconduct."[7] Accordingly, it is hereby

ORDERED that respondent be, and hereby is, suspended from the practice of law for thirty (30) days, effective thirty (30) days from the entry of this opinion.

*So ordered.*

STEADMAN, Associate Judge, dissenting:

I would accept the Board's findings as to the relation of respondent's alcoholism to the misconduct, D.C.App.Bar R. XI, § 7(3), and impose a somewhat greater sanction than the majority here.

---

**7.** The record before us is replete with evidence of affirmative steps taken by respondent toward recovery as well as expressions of remorse. At the time of the filing of her November 1987 brief in this court, she continued to occupy a position as a staff attorney at a federal regulatory commission—a position held since 1981. We see no reason to impose a probationary period at this late date.