**In re Samuel COOPER, III, Respondent.**

**No. 89–1314.**

District of Columbia Court of Appeals.

Argued Nov. 15, 1990.
Decided May 31, 1991.

---

Michael S. Frisch, Asst. Bar Counsel, with whom Thomas E. Flynn, Bar Counsel at the time the brief was filed, was on the brief, for the Office of Bar Counsel.

J. Paul Molloy, with whom Robert L. Ackerly and Angela D. Evans were on the brief, for respondent.

Before BELSON, TERRY and FARRELL, Associate Judges.

BELSON, Associate Judge:

This disciplinary proceeding arises from respondent's misconduct in connection with the representation of his sister-in-law in a personal injury case. The Board on Professional Responsibility (the Board) concurs in a hearing committee's determination that respondent misappropriated client funds, but not dishonestly, DR 9–103(A), and that respondent failed to maintain records and render appropriate accounts, DR 9–103(B)(3).[1] The Board recommends that respondent be suspended from the practice of law for six months and, as a prerequisite to reinstatement, be required to prove fitness to resume practice.[2] We accept the

Board's findings concerning infractions of the disciplinary rules; we remand this case, however, to the Board so that it may reconsider its recommendation regarding sanctions in light of this court's recent opinion in *In re Addams*, 579 A.2d 190 (D.C.1990) (en banc).

I

In August, 1984, respondent agreed to assist his sister-in-law Francine Wright in processing her claim for personal injury protection benefits (PIP) that she would recover from her insurer, Colonial Insurance Company of California, in connection with an automobile accident that occurred on July 26, 1984. Respondent originally informed Steve and Francine Wright they did not need an attorney to process Francine Wright's claim. Nevertheless, after some urging by the Wrights, respondent agreed to handle the PIP claim for a one-third contingent fee. At issue here are two checks that Colonial Insurance Company transmitted to respondent to satisfy Ms. Wright's claim: one dated October 16, 1984, in the amount of $979.50 and a second issued on or about November 2, 1984, in the amount of $1,884.28. Both checks were endorsed by Francine Wright and respondent; he, in turn, deposited them into "The Wright Account" that he opened on or about October 23, 1984, at the National Bank of Washington.

During a period of four months, October 23, 1984, to February 4, 1985, respondent wrote four checks on the account payable to himself: on or about November 2, 1984, he withdrew $979.50; on November 30, 1984, $550.00; on or about December 10, 1984, $675.00; and finally on January 29,

1. The Board also concludes that the record supports the hearing committee's finding that respondent's one-third contingency fee for Francine Wright's insurance claim was not excessive; we agree. *See* DR 2–106(A).

2. The Board, in making its recommendation, relies on D.C.Bar R. XI, § 3(a)(2), which, as amended, allows the Board to recommend and this court to require that a suspended attorney furnish proof of rehabilitation for reinstatement

following a period of suspension not exceeding three years. In this case, the Board recommends a requirement of proof of fitness to practice prior to reinstatement based upon respondent's admission that he is addicted to cocaine, even though his cocaine addiction has no causal connection with his misconduct. For reasons stated within, this will become a consideration only if, upon remand, the Board recommends suspension and a fitness requirement for reinstatement. See note 11, *infra*.

1985, $110.00.[3] Francine Wright received only one check from respondent. It was in the amount of $550.00, and was received on or about November 30, 1984. By February 4, 1985, the Wright account balance reached zero. It is undisputed that between February 4, 1985, and June 6, 1985, respondent used the escrow account as his personal checking account although it was still designated the Wright account.

A dispute arose as to who was to pay Francine Wright's medical bills. Respondent maintained he had informed Francine Wright that she would have the responsibility of paying the medical bills from the funds she received, while the Wrights contended that respondent was to pay the bills from the escrow account funds. Complicating both the relationships among the parties involved and the task of assessing credibility was the fact that respondent separated from his wife, Mr. Wright's sister, after the occurrence of the events in question. Although at various times in 1986 the Wrights asked respondent for an accounting of the proceeds of the settlement, respondent never provided the Wrights a written account, nor did he produce records, with the exception of the Wright account checkbook.

According to respondent, he was allowed to deduct from the escrow account a fee of $933.00 as one-third of the sum of Ms. Wright's PIP benefits, along with fees for services he performed for the Wrights in unrelated legal matters consisting of $400.00 for assistance in a real estate transaction and $750.00 for research on a trust account that was being established for the Wrights' son. The Wrights disputed respondent's claims, asserting that the most he was authorized to withdraw from their escrow account was one-third of the insurance recovery, $933.00.

The Board accepted the hearing committee's finding that in 1985 the Wrights paid respondent $250.00, one-half of their $500.00 deposit that they received back in connection with a real estate matter in which respondent had assisted them. From this finding it is clear that the Board discredited respondent's assertion that he was entitled to $400.00 for his work on the real estate matter. The Board reached no conclusion with respect to whether respondent was entitled to receive $750.00 for the trust-related research, deeming both the record and the hearing committee's second report "less than satisfactory" on the issue of whether an agreement had been reached between the Wrights and respondent and, if so, the amount of the fees and the manner in which they would be collected. The Board noted that it was not necessary for it to reach a determination on this point in order to conclude that respondent had taken more from the account than he was entitled to. It was upon this reasoning that the Board arrived at its finding of misappropriation.

Respondent offered, as a mitigating circumstance, his addiction to cocaine. Applying, however, the preponderance of the evidence standard as this court directed in *In re Miller*, 553 A.2d 201 (D.C.1989), the Board concurred with the hearing committee's findings and conclusions that respondent had failed to demonstrate a causal link between his misconduct and his addiction. The Board further agreed that respondent had not shown present rehabilitation or that his addiction would probably not recur in the foreseeable future.

## II

 This court, upon reviewing the Board's recommendation, "shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record." D.C.Bar Rule XI, § 9(g); *see In re Buckley*, 535 A.2d 863, 865–66 (D.C.1987); *In re Alexander*, 466 A.2d 447, 448 (D.C.1983), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1680, 80 L.Ed.2d 154 (1984). We agree with the Board that there is sufficient evidence of record to support the finding that respondent misappropriated his

---

**3.** Respondent wrote a check from the Wright account to Giant Foods in the amount of $30.05; however, the hearing committee and the Board declined to make additional factual findings concerning this check. Additionally, $12.10 for ordering checks, $5.00 for service charges and $.50 for a balance inquiry were deducted from this account.

client's funds, DR 9–103(A).[4] Misappropriation is defined as "any unauthorized use of client's funds entrusted to him, including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Harrison*, 461 A.2d 1034, 1036 (D.C.1983) (citing *In re Wilson*, 81 N.J. 451, 455 n. 1, 409 A.2d 1153, 1155 n. 1 (1979)); *accord, In re Franklin*, 516 A.2d 171, 174 (D.C.1986), *cert. denied*, 479 U.S. 1087, 107 S.Ct. 1291, 94 L.Ed.2d 148 (1987). Improper intent is not an essential element of misappropriation. *In re Harrison, supra*, 461 A.2d at 1036.

Respondent claimed that he was entitled to $933 for his work on the personal injury matter, $400 for the real estate transaction, and $750 for the trust-related research, totalling $2,083.00. He withdrew money from the Wright account, totalling $1,798.75. The Board, however, adopted the hearing committee's finding that the Wrights agreed to pay respondent only one-half of the $500 they received from the real estate matter, $250.00, and that the Wrights promptly paid respondent this amount.[5] Thus, when the $400 respondent claimed for the real estate matter is deducted from the total of $2,083.00 he claimed, it is seen that he could properly have withdrawn no more than $1,683.00. Even with the most generous interpretation of the dispute over the fee for trust-related research, it is clear that respondent withdrew at least $115.75 more than authorized.

Before the Board, Bar Counsel argued that the foregoing findings required the further finding that the misappropriation was dishonest. The Board was not convinced of that proposition by clear and convincing evidence, and therefore accepted the committee's finding of no dishonesty.[6] Before this court, Bar Counsel no longer contends that a finding of dishonesty was required by the subsidiary findings, and we do not overturn the Board's determination on this issue.

We find sufficient record evidence to support the Board's additional conclusion that respondent failed to maintain records and render appropriate accounts, DR 9–103(B)(3).[7] An attorney is required to maintain financial records for five years following final distribution of the client's property. The relevant rule in effect at the

**4.** In light of the hearing committee's findings that respondent's misappropriation did not involve dishonesty (DR 1–102(A)(4)), the Board declined to conclude that Bar Counsel established, by clear and convincing evidence, that respondent dishonestly misappropriated his client's funds. In so doing, the Board emphasized that the evidence in this case consisted of "a contest of credibility with little or nothing to tip the balance beyond the testimony itself," in a context characterized by marital discord, revenge, and family feuding.

**5.** Because neither party presented documentary evidence to the hearing committee, its findings were based entirely on credibility determinations.

**6.** The Board stated:

In the face of Bar Counsel's vigorous assertion, the Committee expressly declined to find dishonesty. The Committee said:

This Committee was not presented with any clear and convincing evidence that demonstrated that Respondent knew that he had no right to the funds which he was using to pay himself....

1st Hearing Committee Report at 22.

We are somewhat troubled by this conclusion. After all, the Hearing Committee credited the Wrights' version of the financial relationship. That version was so at odds with Cooper's—which the Committee did not credit—that it is hard to see how, assuming the Wrights' version was correct, Cooper could have reached a truly held, albeit inaccurate, understanding to which he testified. Indeed, in its Second Report, the Committee acknowledged that it had found:

Respondent's explanation of the amount of fees withheld and the manner in which they were deducted to be totally incomprehensible and less than credible.

2nd Hearing Committee Report at 8.

Nevertheless, that was the Committee's finding. We are loathe to substitute our judgment for theirs, as they heard and saw the witnesses testify and were in a far better position than we to make credibility assessments. And, after all, that is what this case boils down to—a contest of credibility with little or nothing to tip the balance beyond the testimony itself.

**7.** DR 9–103(B)(3) provides that a lawyer shall "[m]aintain complete records of all funds, securities, and other properties of a client coming into possession of the lawyer and render appropriate accounts to his client regarding them."

time of the transactions in question here was former D.C.Bar R. XI, § 14, which provided:

Every attorney subject to these Rules shall maintain complete records of the handling, maintenance, and disposition of all funds, securities, and other properties of a client at any time in his possession, from the time of receipt to the time of final distribution, and shall preserve such records for a period of 5 years after final distribution of such funds, securities, or other properties or any portion thereof.

Respondent produced only the Wright account checkbook, assertedly because the spiral notebook in which he kept the Wrights' records disappeared. Not only did respondent fail to render an accounting at the Wrights' request, he failed to provide adequately for the maintenance of his clients' financial records. In sum, the Board's findings with respect to failure to render a proper accounting and maintain adequate records are supported by substantial evidence of record.

### III

We next turn to the issue of sanctions. This court reviews the Board's recommendation for sanctions pursuant to D.C.Bar R. XI, § 9(g), which states that this court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." *Accord, In re Hutchinson,* 534 A.2d 919, 924 (D.C.1987) (en banc). The Board recommends that respondent be suspended from the practice of law for six months and be required to prove fitness for practice prior to being reinstated.

█ Respondent asks us to consider a question of first impression: should an attorney's cocaine addiction be considered a mitigating factor in imposing sanctions for violations of the rules governing the conduct of lawyers? In *In re Kersey,* 520

A.2d 321 (D.C.1987), this court held that chronic alcoholism should be considered as a mitigating factor in determining the appropriate discipline if the attorney showed the existence of a sufficient nexus between his alcoholism and his misconduct.[8] *Id.* at 326–27. The standard that must be met by a preponderance of the evidence is that "but for" the alcoholism, the misconduct would not have occurred. *Id.; see also In re Miller, supra,* 553 A.2d at 203 ("where an attorney claims alcoholism as a mitigating circumstance in a disciplinary proceeding, the attorney has the burden of proof on that issue and the attorney must show that the alcoholism 'substantially affected' the charged misconduct by a preponderance of the evidence." (footnote omitted)).

In this case, the Board assumed that the same standard would apply to cocaine addiction if it were to be recognized as a mitigating factor, and thus considered whether respondent had shown, by a preponderance of the evidence, that but for his asserted cocaine addiction his misconduct would not have occurred. The Board noted that in *Miller, supra,* the respondent had engaged in grossly deviant behavior that, in the opinion of an expert witness, could be explained only as the result of Miller's alcoholism. The Board went on to state:

While cocaine addiction can have the same effect on the addict, the simple fact is that here, the misconduct involved is not so bizarre as to warrant the presumptive leap endorsed in *Miller.* True, Cooper took money that did not belong to him, but the Atlantic Reporter is replete with opinions involving attorneys, who are not addicts, who took money that was not theirs. While wrong, it is not so grossly deviant that it raises a red flag of caution. And, indeed, in this case Cooper does not attribute his misappropriation to his addiction in any compelling or understandable way. His view on misappropriation continues to be that he testified truthfully that the Wrights

---

8. The twenty-four violations charged against Kersey included two instances of intentional misappropriation and one of commingling funds. *In re Kersey, supra,* 520 A.2d at 324. Kersey's chronic alcoholism was found to have

substantially affected his professional behavior, warranting a stay of the execution of his disbarment and his placement on probation for a period of five years. *Id.* at 327–28.

agreed to the fees he withdrew and that they are simply testifying falsely. In contrast, Miller—after admitting her alcoholism—acknowledged that what she did was wrong but explained that her judgment was impaired. Cooper's explanation simply does not have persuasive indicia of drug or alcohol induced motivations. Indeed, Cooper testified that at the same time he was engaging in the misappropriation in this case, he was working productively and effectively on a number of complex projects. His professional judgment, according to him, was quite good. His personal judgment was not. But that simply doesn't close the loop on causation. As he explained it, his addiction may have impaired his judgment as to whether he should have represented Mrs. Wright in the first place, and how careful he should have been about protecting records, but as to his taking Mrs. Wright's money, Cooper insisted—in the midst of his causation testimony—that the Wrights had agreed to all the fees Cooper withdrew. Cocaine had nothing to do with the matter.

We agree with the Board's analysis. Because we conclude that respondent failed to meet the *Kersey* standard by showing a nexus between his asserted addiction to cocaine and his misconduct, we decline to address the issue of whether addiction to an illegal drug should be treated the same as alcohol addiction for purposes of bar discipline.[9]

■ We consider next whether the Board's recommended sanction of a six-month suspension and a requirement to prove fitness for practice is consistent with prior dispositions involving comparable conduct. Following full briefing by the parties but prior to oral argument, this court handed down its en banc opinion in *In re Addams, supra,* 579 A.2d 190, where we "reaffirm[ed] that in virtually all cases of misappropriation, disbarment [would] be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." *Id.* at 191. Except in the latter type of case, a lesser sanction is appropriate only in extraordinary circumstances where, for example, the mitigating factors[10] are strong enough to overcome the aggravating factors (if any are present) and the presumption of disbarment. *Id.*

In light of the fact that the Board, in recommending a sanction, did not have the benefit of *In re Addams, supra,* we remand this case to enable it to make an appropriate recommendation of sanction under the *Addams* standard.[11] We note that in *Addams,* we made it clear that we will continue to follow the Board's earlier recommendation that this court should adopt a rule that "misappropriation of client funds in cases involving more than simple negligence [should] ordinarily result in disbarment even though the proof does not rise to the level of willful corruption." *Id.* at 196 (quoting *In re Hines,* 482 A.2d 378, 386 (D.C.1984) (quoting in turn the report of the Board on Professional Responsibility)). Accordingly, it is important that the Board state whether in this case, where it adopts the hearing committee's finding that respondent acted pursuant to "a truly held, albeit inaccurate, understanding," it finds that Cooper's behavior

---

9. We note that even if respondent had proven by a preponderance of the evidence his misconduct resulted from his illegal drug use, he would be faced with the failure of the record to establish the significant evidence of rehabilitation required by the *Kersey* standard. *See In re Kersey, supra,* 520 A.2d at 327. Respondent, during oral argument, asked to have the record reopened for that purpose if it would have made a difference. *See infra* note 11.

10. *See In re Reback,* 513 A.2d 226, 233 (D.C. 1986) (en banc).

11. Respondent filed with this court, after oral argument, a motion for acceptance of submission of evidence of the current status of his rehabilitation. We deny the motion, but note that the matter of respondent's present rehabilitation may be addressed by the Board if, on remand, it again recommends suspension and proof of fitness for the practice of law as a requirement for resumption of practice.

involved on the one hand only simple negligence or its equivalent, or on the other hand something more serious than simple negligence. In either event, the Board should recommend explicitly whether, in light of *Addams,* the degree of misconduct the Board finds should result in disbarment or in a specified lesser sanction.

*So ordered.*