In re William J. TEMPLE, Respondent.

No. 90–297.

District of Columbia Court of Appeals.

Argued April 24, 1991.
Decided Sept. 11, 1991.

Wallace E. Shipp, Jr., Deputy Bar Counsel, with whom Thomas E. Flynn, Bar Counsel, Washington, D.C., at the time the

brief was filed, was on the brief, for the Office of Bar Counsel.

Steven C. Tabackman, with whom Hilary Harp, Washington, D.C., was on the brief, for respondent.

Ann Lea Harding, Thomas Earl Patton and William J. Spriggs, Washington, D.C., were on the brief, for amicus curiae, The Lawyer Counselling Committee.

Before FERREN, TERRY and WAGNER, Associate Judges.

WAGNER, Associate Judge:

The Board of Professional Responsibility (the Board) found that respondent, William Jordan Temple, engaged in serious misconduct between 1979 and 1986 in violation of various disciplinary rules which, absent mitigating factors, would warrant disbarment. The violations cited are not disputed before this court. The principal issue raised is whether an attorney's addiction to drugs, legally acquired, may be considered as a mitigating factor in imposing sanctions for the attorney's misconduct. We hold, as the Board recommended, that addiction to prescription drugs lawfully obtained, like alcoholism, can be treated as a mitigating factor in sanctioning an attorney for misconduct.

Although the Board concluded that respondent was addicted to drugs lawfully acquired and that his addiction "substantially affected" his professional conduct, it nevertheless recommended that respondent be disbarred because he failed to prove by a preponderance of the evidence that addiction was the "but for" cause (except in one instance) of his misconduct. In reaching this conclusion, the Board equated the "but for" cause found in *In re Kersey*, 520 A.2d 321, 327 (D.C.1987), with "sole cause." The Board's interpretation of the requisite causal nexus between the attorney's misconduct and the mitigating factor is too narrow, and it is inconsistent with prior holdings of this court. We reaffirm that the "but for" test set forth in *Kersey*, as further explained in subsequent decisions,

requires proof that the attorney's conduct was "substantially affected" by alcoholism or drug addiction. Therefore, we accept the Board's alternate conclusion, which is supported by substantial evidence, that respondent's professional conduct was substantially affected by his drug addiction and may be considered in mitigation of sanctions. We remand the case to the Board for further proceedings to determine whether the current status of respondent's rehabilitation is such as to warrant mitigation of sanctions and for a recommendation of sanctions with consideration given to such additional information.

## I.

This case involves two disciplinary proceedings against respondent which were heard by two separate Hearing Committees. The first hearing was held before Hearing Committee Number Four which made findings that respondent failed to file three annual accounts in 1980, 1981 and 1982 as required by Super.Ct.Civ.Rule 305(a) in connection with the guardianship of his nephew, as a result of which respondent was removed as guardian in 1985. The respondent also failed to file a required final account. The case was referred to the Auditor Master who found a deficiency of $7015.76 in respondent's account for the guardianship. Judgment was subsequently entered against respondent for that sum because he failed to promptly deliver the amount found due to the successor guardian. Hearing Committee Number Four also found that respondent knowingly filed four altered bank statements for the guardianship account with the Register of Wills.[1] As a result of this conduct, the Hearing Committee concluded that respondent violated the following disciplinary rules: (1) DR 1–102(A)(3) (illegal conduct involving moral turpitude) and DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation) (four instances related to each false bank statement); (2) DR 1–102(A)(5) (conduct prejudicial to the administration of justice) (four instances for fil-

---

**1.** *See* Super.Ct.Prob.R. 15(a)(1) (verification of assets), made applicable to estates of minors

filed prior to January 1, 1981 by Super.Ct.Prob.R. 1.

ing false bank statements and for failure to file four accounts); (3) DR 9–103(B)(4) (failure to pay promptly client funds) (for failure to deliver guardianship funds to successor); (4) DR 6–101(A)(3) (neglect of legal matter) and DR 7–101(A)(1) (failure to seek client's lawful objectives) (failure to file guardianship accounts).

Complaints involving two of respondent's other clients were heard by Hearing Committee Number Four. In June 1980, one of respondent's clients was awarded an absolute divorce in the Superior Court of the District of Columbia, and the trial judge instructed respondent to submit an order for signature to effectuate the judgment of the court. Although the client brought the matter to respondent's attention in the intervening years, as of the date of the initial hearing in this proceeding, June 7, 1988, respondent had not submitted the order, and the judgment of the court had not been finalized. Based on this conduct, Hearing Committee Number Four concluded that respondent violated DR 1–102(A)(5) (conduct prejudicial to the administration of justice); DR 6–101(A)(3) (neglect of a legal matter); and DR 7–101(A)(1) (intentional failure to seek client's lawful objectives). Neither respondent nor Bar Counsel contested these findings, and the Board adopted them.

The final matter heard by Hearing Committee Number Four involved respondent's representation of a defendant in a civil action in the Superior Court. Respondent failed to respond to the plaintiff's motion for summary judgment, and the motion was granted as unopposed. Respondent also failed to inform the client that the plaintiff had noted her deposition. Plaintiff's motion for sanctions against the client for failure to appear at the deposition was dismissed as moot because summary judgment had been granted. The Committee found that respondent's conduct in this case violated DR 6–101(A)(3) (neglect of a legal matter) and DR 7–101(A)(1) (intentional failure to seek client's lawful objectives). The Board also adopted these uncontested conclusions.

Hearing Committee Number Six heard a complaint involving respondent's representation of a client in a domestic relations case. The client and her husband were residents of Virginia in April 1982 when she retained respondent at his office in Arlington, Virginia. Although respondent was not a member of the Virginia Bar and had been subject to actions by the Virginia authorities concerning practice there without a license, respondent failed to inform his client that he was not licensed to practice in Virginia. Respondent's stationery had the Virginia address, and the client thought he was licensed to practice there. Respondent filed his client's action for custody, support and maintenance in the District where he succeeded in overcoming jurisdictional challenges and obtained a $2000 per month support award in February 1984. In the meantime, the client's husband obtained in Virginia an order for temporary visitation rights after respondent's client, consistent with respondent's advice, appeared without counsel. A second hearing on visitation was continued because respondent had a family emergency. Respondent prepared his client and her children for a third scheduled hearing on visitation; however, on the morning of the hearing, respondent told the client that it was not necessary for her to appear. The Virginia court entered an order granting the client's husband visitation rights which respondent's client had sought to prevent.[2]

In March 1984, the husband filed for divorce in Virginia. Respondent's client did not appear in the action based on respondent's advice that she could ignore the suit because the District action took "precedence." The Virginia court granted the husband a divorce decree which did not provide for child support, spousal support or property division. Thus, the client's right to spousal support was foreclosed permanently. The client first learned of the divorce when she received notice of a partition action for the sale of her home. Again, respondent advised his client to ignore the suit. The client was notified by the Virginia authorities that respondent

---

**2.** The client had alleged that her husband abused the children.

was not licensed to practice in Virginia. She retained other counsel and arranged a settlement which allowed her to purchase her husband's interest in the home and to receive $100 per week in child support. Evidence was offered that in the fall of 1982, the attorney for the client's husband had made a settlement offer to respondent under the terms of which the husband would pay respondent's client $2000 per month and transfer the marital home to her. Respondent failed to convey the offer, which was later withdrawn.[3] Respondent claims that he has no recollection of the offer.

Hearing Committee Number Six concluded that respondent violated the following disciplinary rules in connection with this domestic relations case: DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation); DR 6–101(A)(3) (neglect of a legal matter entrusted to him); DR 7–101(A)(1) (failure to seek client's lawful objectives); DR 7–101(A)(3) (intentionally prejudicing client during representation); and DR 2–101(A) and (B)(6) and DR 2–102 (both related to misleading client about his status as an attorney).

In summary, the two Hearing Committees found that respondent violated a total of twenty-seven disciplinary rules, and the Board found their findings and conclusions to be supported by substantial evidence in the record. Hearing Committee Number Four recommended a four-year suspension for the violations it found, and Hearing Committee Number Six found warranted a three-year suspension with proof of fitness prior to reinstatement. However, Hearing Committee Six recommended disbarment in view of the violations found by both Committees. Considering the number, duration and seriousness of the violations, the Board concluded that the appropriate sanction was disbarment, absent mitigating circumstances. Respondent does not dispute here the specific findings of misconduct found by the Hearing Committees and adopted by the Board nor that the serious misconduct in which he engaged warrants disbarment, absent mitigation.

## II.

■ We turn then to the principal issue raised in this case, whether respondent's addiction to drugs lawfully obtained is an appropriate factor to be considered in mitigation. Both Hearing Committees concluded that the mitigation principles set forth in *Kersey, supra,* 520 A.2d at 321, should be extended to cases involving an attorney's addiction to prescription drugs. Hearing Committee Number Six concluded, and the Board agreed, that addition to prescription drugs lawfully obtained should be treated like alcoholism in considering sanctions. We agree.

In holding in *Kersey, supra,* that alcoholism is a mitigating factor in determining discipline, this court recognized the severe effects of alcoholism on human physiology, behavior and judgment as shown by scientific and other pertinent information. *Id.* at 526. Likewise, the evidence before the Hearing Committees in this case demonstrated that similar symptoms are experienced by persons addicted to drugs. Three medical experts testified that drugs have an effect on the brain similar to alcohol. Dr. Kestutis J. Pauliukonis, a medical doctor specializing in evaluation and treatment of addicts, testified that use of mood altering drugs over time can interfere with the physical functioning of the brain and cause memory lapses, impaired judgment and irrational thinking. He also testified that drug addiction, like alcoholism, seems to be affected by genetic history. Dr. Rodney Burbach, a psychiatrist specializing in alcoholism and drug abuse, provided similar testimony. He also explained that persons like respondent, suffering an addictive disease, can be disorganized and experience memory loss, apathy, paranoia, depression and anxiety. Bar Counsel's expert witness, Dr. Thomas Goldman, a psychiatrist, identified similar effects on persons addicted to drugs. He testified that amphetamines can

---

**3.** This client sued respondent for malpractice and obtained a consent judgment for $175,000. Respondent declared bankruptcy, and the debt was discharged except for approximately $22,-000.

result in paranoia psychosis. A substance abuse counselor, who is also a registered nurse, testified that respondent's addiction to amphetamines could result in irrational thinking and behavior, paranoia, or amphetamine psychosis with attendant hallucinations and delusions. Susan Makepeace, the addiction counselor for the District of Columbia Bar, provided similar testimony.

There are marked similarities between the effects of prescription drugs on the system and the conduct of persons who use them with that of persons addicted to alcohol. These characteristics are sufficiently analogous for reason and fairness to dictate that the *Kersey* standards should apply. Therefore, we hold, at least with respect to addiction to prescription drugs legally obtained, that the *Kersey* rule applies where the requisite nexus is established between the drug addiction and the misconduct. *See Kersey, supra,* 520 A.2d at 327.[4]

### III.

It is not disputed that respondent was addicted to prescription drugs during the period that his misconduct occurred. Significantly, respondent's father and sister died of illnesses associated with alcoholism. The Board also concluded, and we agree, that there is substantial evidence in the record that respondent obtained his drugs lawfully. Respondent began abusing prescription drugs in his first year of law school in 1967. His physician prescribed amphetamines and tranquilizers which he took throughout law school. In 1971, respondent was admitted to the District of Columbia Bar. For the next five years, he used a variety of prescribed amphetamines on a daily basis, including Ritalin, Tenuate Dospan, Dexamil and Desbutal. In the late 1970's, respondent met a physician who became a close personal friend. At the time, respondent was taking Valium in con-

nection with back and urological problems. The physician prescribed for respondent or gave him samples of a variety of amphetamines, tranquilizers and the narcotics Percodan, Dilaudid and Tylenol 3 with codeine during the 1980's. By 1987, respondent began taking stronger medications. Respondent had an automobile accident in December 1987, and a urine test in the hospital emergency room showed that he had quantities of Dexedrine, Valium and Percodan in his system. At this time, respondent was referred for help with his addiction.

█ The Board concluded that respondent's addiction to prescription drugs substantially affected his professional conduct, and there is ample evidence in the record to support this conclusion. However, the Board concluded that the "but for" test of *Kersey* requires that alcoholism must be proven to be the sole cause of an attorney's misconduct before it may be considered in mitigation of sanction. The Board interprets too narrowly the rule announced in *Kersey*.

The Board derives its construction from the following passage:

> But for Kersey's alcoholism, his misconduct would not have occurred. We hold that this "but for" test is the standard that must be met in order to prove causation in disciplinary cases involving alcoholism.

*Kersey, supra,* 520 A.2d at 327. When considered in context of the whole opinion, it becomes apparent that what must be shown by the attorney seeking to rely upon alcoholism as a mitigating factor is that the condition substantially affected his or her professional conduct. Just prior to the statement containing the "but for" language, we noted that "a sufficient nexus between Kersey's alcoholism and his misconduct" had been established. *Id.* The

---

4. We decline on this record to decide whether drug abuse will mitigate the sanction when the attorney's conduct involves criminality. The Board found that respondent was addicted to prescription drugs legally obtained. The finding is supported by substantial evidence, and we are obliged to accept it. D.C.Bar Rule XI, § 9(g); *In re Evans,* 578 A.2d 1141, 1142

(D.C.1990). Thus, the question of drug abuse involving criminality is not properly before us. The expansion of the rule to such situations entails numerous considerations which should be considered on a record developed in that context. *See In re Cooper,* 591 A.2d 1292, 1296–97 (D.C.1991).

court accepted the Board's conclusion that removal of the substantial contributing factor (alcoholism) would eliminate the offensive conduct, even though the attorney candidly admitted unacceptable reasons for some of the misconduct. *Id.* at n. 16. Thus, alcoholism was not the "sole cause" of the misconduct, but a substantial contributing one, the elimination of which was expected to assure the attorney's fitness to practice law. Elsewhere in the *Kersey* opinion, this is further elaborated upon as follows:

> While we believe that it is an impossible burden to prove that Kersey's alcoholism caused each and every disciplinary violation, the fact that alcoholism has a severe effect on human physiology and behavior, along with the record evidence of Kersey's own behavior, establish that Kersey's professional conduct was substantially affected by his alcoholism.

The decision in *Kersey* was not based upon a "sole cause" test, but rather, as reflected in the opinion as a whole, upon the fact that the attorney's misconduct was substantially affected by alcoholism. Thus, in applying the "but for" test, the focus of the inquiry is on whether removal of the substantial contributing factor will end the misconduct. *Id.* at 327 n. 16.

Subsequent decisions have made clear that the "but for" language of *Kersey* is not a "sole cause" test. In explaining the burden which the attorney must meet in such cases, this court has stated:

> Our reading of *Kersey* convinces us that where an attorney claims alcoholism as a mitigating circumstance in a disciplinary proceeding, the attorney has the burden of proof on that issue and the attorney must show that the alcoholism "substantially affected" the charged misconduct by a preponderance of the evidence.

*In re Miller*, 553 A.2d 201, 203 (D.C.1989). In applying the *Kersey* "but for" test in evaluating an attorney's emotional condition in mitigation of sanction, the Board employed, and we accepted in *Miller*, the "substantially affected" analysis. Like-

wise, in *In re Peek*, 565 A.2d 627, 631 (D.C.1989), we adhered to the requirement that to make the *Kersey* "but for" showing, the attorney must "demonstrate that his or her professional conduct was 'substantially affected by ... alcoholism'" (citing *In re Kersey, supra,* 520 A.2d at 326 and *In re Miller, supra,* 553 A.2d at 203).

We reaffirm that there must be a close nexus between the misconduct and the mitigating factor proffered, whether alcoholism, drug addiction or mental illness. To meet the test, the attorney has the burden of showing by a preponderance of the evidence that his professional conduct was substantially affected by the recognized mitigating factor, in this case addiction to prescription drugs. *See Miller, supra,* 553 A.2d at 203. Stated differently, the attorney must show that the factor was sufficiently determinative of his conduct that its removal can be expected to end the misconduct.

## IV.

Although the Board concluded under its interpretation of the "but for" test that respondent did not meet his burden of proof, it also applied the "substantially affected" test and concluded that respondent made the requisite showing under this standard. There is substantial evidence to support this conclusion. During the relevant time period, 1979–1986, respondent was addicted to and using substantial doses of amphetamines, tranquilizers and narcotics. Although he was able to manage an appearance of normalcy in his law practice, at times only with the help of law clerk, associate, and secretary, in reality he stayed close to trouble. He focused on certain cases while ignoring others. Even though he was not licensed to practice in Virginia, he moved his office there and got into trouble with the Virginia authorities. His relationship with the lawyer with whom he shared office space deteriorated, and respondent moved to another office in Virginia. Respondent's behavior became erratic. His relationship with his wife deteriorated, and he experienced financial difficulties. After a dispute with his landlord

over unpaid rent in 1984, respondent walked away from his law office, leaving his equipment and portions of his files. For a month respondent continued to leave home as if going to the office. He launched an unsuccessful business with the physician who supplied his drugs, and he continued to use drugs. It was not until he had an automobile accident in December 1987 that respondent realized the severity of his problem. Respondent was addicted to prescription drugs and suffering the typical effects during the time he was advising the clients whose complaints precipitated these proceedings. Each expert witness testified that respondent's professional misconduct was substantially affected by his drug addiction. The Board concluded that the "substantially affected" test was met.

## V.

In imposing discipline when an attorney proves that the misconduct was substantially affected by drug addiction, rehabilitation from that condition is a significant factor in determining discipline. *See Kersey, supra,* 520 A.2d at 327. "[W]here there is significant evidence of rehabilitation, a period of actual suspension is not always mandated." *Id.* The Board concluded that even if respondent's addiction substantially affected his professional misconduct, he had failed to prove by clear and convincing evidence rehabilitation warranting mitigation. Therefore, the Board recommended disbarment. Bar Counsel contends that respondent has not sustained this burden because he has not demonstrated a sufficiently sustained period of successful recovery. *See In re Nadrich,* 44 Cal.3d 271, 279, 243 Cal.Rptr. 218, 221, 747 P.2d 1146, 1149 (1988) (abstinence from drug usage for almost six years, including two years of non-custodial rehabilitation, sufficient to justify one year of actual suspension and four years of probation with strict monitoring). Respondent began detoxification in December 1987, but he consumed some alcohol and took some drugs prescribed in connection with two spinal surgeries. The experts agreed that respondent's recovery was fragile at the time they testified. Respondent claims that he is sufficiently rehabilitated in that as of the date of filing his brief, July 6, 1990, he had been drug-free for thirty months. If he has remained drug-free, he has now been drug-free for almost four years.

In *Kersey,* we recognized that the status of rehabilitation may change pending final disposition of the case. We made the following observation pertinent here:

We acknowledge the difficulty that the Board faces in deciding this issue since a respondent's rehabilitation period likely will have been short when the Board makes its recommendation. By the time this court hears and decides a case, a respondent's recovery will have been longer, and one of the reasons for a period of suspension may diminish.

520 A.2d at 327 n. 19. To assure full consideration of the issue for the protection of the public and the profession, and in fairness to respondent, before sanctions are determined finally, an appropriate hearing should be held to ascertain the status of respondent's rehabilitation since the original evidentiary hearings on the complaints. Disciplinary sanctions are not imposed as punishment, but as a means of assuring the attorney's fitness to practice and for protecting the public from misconduct by attorneys which may cause harm. *In re Kennedy,* 542 A.2d 1225, 1230 (D.C.1988) (citations omitted). Therefore, we remand the case for further proceedings and for a determination of whether there is significant evidence of respondent's rehabilitation, including evidence occurring subsequent to the earlier hearings, and for the Board's recommendation of sanctions consistent with its findings.