**In re Terri Y. LEA, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 422762).**

**No. 06–BG–188.**

District of Columbia Court of Appeals.

Argued May 15, 2007.

Decided April 23, 2009.

Judith Hetherton, Senior Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, Catherine L. Kello, Assistant Bar Counsel, and John T. Rooney, Assistant Bar Counsel at the time the brief was filed, were on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

No appearance was entered and no argument was presented on behalf of respondent.

Before RUIZ, Associate Judge, and TERRY and FARRELL, Senior Judges.*

TERRY, Senior Judge:

The Board on Professional Responsibility ("the Board") recommends that respondent Terri Lea be suspended from the practice of law for thirty days and that, before resuming the practice of law, she be required to show that she has cooperated with Bar Counsel's investigation into the underlying complaint against her. The proposed sanction is based on the finding

---

* Judge Farrell was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on January 23, 2009.

of a hearing committee that, among other things, Ms. Lea violated Rule of Professional Conduct 8.1(b) (failure to respond to Bar Counsel's lawful demand for information), Rule 8.4(d) (conduct that seriously interferes with the administration of justice), and D.C. Bar Rule XI, § 2(b)(3) (failure to comply with a Board order). The Board agreed with the hearing committee's recommended sanctions, except that the Board did not recommend that Ms. Lea prove her fitness to practice law before being readmitted.

Before this court, Bar Counsel urges us to impose a fitness requirement in addition to the other sanctions recommended by the Board. Ms. Lea did not file an exception to the hearing committee's recommendation to the Board, nor has she filed a brief or otherwise challenged the Board's recommendation to this court. In fact, Ms. Lea has not been involved in her case since February 2, 2005, when she participated by telephone at a hearing conducted by the hearing committee.[1]

We find Bar Counsel's arguments persuasive. Accordingly, we order that Ms. Lea be suspended from the practice of law for thirty days, with reinstatement conditioned on (1) the filing of a response to the underlying disciplinary complaint, which Ms. Lea has yet to address, and, as the hearing committee recommended, (2) proof of her fitness to practice law.

## I

### A. Background and Procedural History

Terri Lea was admitted to the Bar of this court in 1990. She first came to the attention of the disciplinary authorities on April 20, 2001, when the Office of Bar Counsel received a copy of an order from the Civil Division of the Superior Court imposing Rule 11 sanctions on her. *See* Super. Ct. Civ. R. 11. The order directed Ms. Lea and the attorney who represented her in a legal action in which Ms. Lea was the plaintiff to pay certain attorney's fees in the amount of $7,472.02. According to the order, the sanctions were imposed after Ms. Lea and her attorney, upon receiving a default judgment in the case, filed a motion to amend the amount of the judgment from $13,500 to $50,000, claiming that the previous amount had been a typographical error. The trial court found that there had been no typographical error and that Ms. Lea "provided no credible evidence that she was entitled to any fees from the defendant in excess of $13,350."

On May 11, 2001, Bar Counsel sent a copy of the order (hereafter "the complaint") to Ms. Lea, along with a letter requesting her response by May 21. The letter and complaint were sent by regular mail to Ms. Lea's address on file with the D.C. Bar, which was "4410 Massachusetts Avenue, N.W., Suite 140."[2] They were not returned by the post office, and Ms. Lea filed no response.

On June 6 Bar Counsel mailed Ms. Lea a second letter by regular mail, requesting a response by June 11, but again no response was received. On June 19 an unknown person sent Bar Counsel a facsimile of the May 11 letter bearing the handwritten notation "Wrong address. Not here."

---

1. We are informed that Ms. Lea has been administratively suspended from the practice of law in the District of Columbia because of her failure to pay Bar dues. *See Sitcov v. District of Columbia Bar,* 885 A.2d 289 (D.C. 2005) (discussing administrative suspension for non-payment of dues).

2. 4410 (actually 4400) Massachusetts Avenue is the address of the main campus of American University. Ms. Lea stated at the hearing in this case that she had previously been a professor at the University for six years and that she received her "professional mail" there as well.

Bar Counsel did not have any other address on file for Ms. Lea.

At some point before September 18, 2001, Ms. Lea somehow learned that Bar Counsel was trying to contact her, so she called Assistant Bar Counsel Catherine Kello. After their conversation, Ms. Kello drafted a third letter to Ms. Lea, dated September 18, 2001, which stated, in relevant part:

This letter confirms our telephone conversation today during which you indicated that you would prepare today a written response to the complaint filed against you in the above-referenced matter. You also stated that you would file your response with our office within the week. We ask that you provide your written response to us by September 26, 2001.

The letter was sent to a street address in "Monessen, PA 15062," the mailing address which Ms. Lea gave Ms. Kello during their telephone conversation. Ms. Lea did not submit a response, however, nor was Ms. Kello's letter returned.

After about nine months, Bar Counsel sent Ms. Lea a fourth letter, dated June 21, 2002, and mailed by certified mail to the Pennsylvania address. The letter stated that Bar Counsel would pursue "further action through the Board on Professional Responsibility that may include filing disciplinary charges" against Ms. Lea unless

she responded by July 15, 2002. This letter was returned as "unclaimed." When Bar Counsel resent the letter by certified mail, it was returned with the notations "refused" and "mail on hold" written on the envelope.

On August 23, 2002, Bar Counsel filed with the Board a motion to compel a response to the complaint. Copies of the motion were sent to Ms. Lea in Pennsylvania by first class mail. She did not respond to the motion, nor was it returned by the post office. On September 19, 2002, the Board issued an order directing Ms. Lea to respond to the complaint within ten days. This order was also sent to the Pennsylvania address. The affidavit of service indicated that the process server hand-delivered the envelope to Ms. Lea's mother on October 7, 2002. Again, however, Ms. Lea did not respond to the order.

About three months later, on January 2, 2003, Bar Counsel filed a Specification of Charges and Petition, instituting formal disciplinary proceedings against Ms. Lea, and sent copies to Ms. Lea at the Pennsylvania address.[3] Bar Counsel also hired process servers to deliver these documents by hand. Then, on February 5, 2003, Ms. Kello drafted and sent a letter in response to a telephone conversation with Ms. Lea. This letter stated:

---

**3.** Under the current version of this court's Rules Governing the Bar, it is not always necessary for Bar Counsel to file a formal petition instituting a disciplinary proceeding when an attorney fails to cooperate with an investigation. An amendment to D.C. Bar Rule XI, § 3(c)(1), which took effect in August 2008, authorizes the Board (presumably after a request from Bar Counsel) to seek from this court an order temporarily suspending an attorney for "fail[ing] to respond to an order of the Board in a matter where Bar Counsel's investigation involves allegations of serious misconduct." The next sentence defines "ser-

ious misconduct" to include "fraud, dishonesty, misappropriation, commingling, overdraft of trust accounts, criminal conduct other than criminal contempt, or instances of neglect that establish a pattern of misconduct in the pending investigation." We express no opinion here on whether Ms. Lea's conduct would constitute "serious misconduct" under this definition. We simply take note of the 2008 amendment to the rule as providing to Bar Counsel an alternative means of dealing with an attorney's failure to respond to a disciplinary complaint.

Pursuant to your telephone request of February 4, 2003, enclosed please find a copy of the Specification of Charges and Petition that have been filed against you with the Board on Professional Responsibility. You have requested that we send these documents to you at the above Monessen, PA address, even though you stated that you do not reside there. Despite our request, you have declined to provide Bar Counsel with a current address where we can serve you personally with papers. You also declined our invitation to pick up a copy of the papers at our office. We advised you that we plan to seek permission to serve you by publication.

This also confirms that you acknowledged on February 4, 2003, that you have received a copy of the September 19, 2002, Board order compelling you to provide a response to the Bar Counsel complaint filed against you. You stated that you have not responded to that order.

Bar Counsel mailed the requested documents but did not receive a response. On June 11, 2003, Bar Counsel received an affidavit of attempted service, reflecting a number of unsuccessful attempts to serve Ms. Lea. The affidavit indicates that "several attempts" were made at the Pennsylvania address and that "several attempts" were also made at an address in Baltimore.

On July 2, 2003, Bar Counsel filed a motion with this court, requesting leave to serve the Specification of Charges by alternative means. A copy of the motion was sent to Ms. Lea at the Pennsylvania address. This court granted the motion and ordered Bar Counsel to send copies of the petition to Ms. Lea at her last known residence and to publish an announcement

"in the Washington Post and the Washington Times, for two consecutive publications." Announcements appeared in the Washington Post (on May 20 and 21, 2004), the Washington Times (on July 16 and 17, 2004), and the Daily Washington Law Reporter (on May 21 and 24, 2004). Bar Counsel sent copies of the court's order and the petition to the Pennsylvania address on July 30, 2004; however, the certified mailing was returned unclaimed.

### B. *The Disciplinary Hearing*

The hearing committee convened its hearing in this matter at 9:35 a.m. on February 2, 2005. The chairman of the committee stated at the outset that Ms. Lea had called to say that she wanted to participate in the hearing and could be there by 11:00 o'clock. The proceedings were adjourned until then; however, when Ms. Lea failed to arrive at 11:00 a.m., the hearing began without her.

The Assistant Bar Counsel had just begun to examine a witness, Glen Harley, a legal secretary with the Office of Bar Counsel, when Ms. Lea called again, and the hearing committee, with her consent, allowed her to participate by telephone.[4] Ms. Lea asked for a continuance because she had overslept, because she had just taken her daughter to school (a local school in the District of Columbia, which she named), and because she had another appointment scheduled for 12:30 p.m. When the Assistant Bar Counsel objected to a continuance, Ms. Lea stated in response:

I guess the consideration that I'm requesting is maybe not the norm; however, I think that when the base case is looked upon, it's not so severe that I think a day or even another month—if it

---

4. It is not entirely clear from the record, but it appears that Ms. Lea's incoming call was placed on a speaker phone so that everyone present could hear it.

has gone along for the last three years, I imagine it can go on for another day or week to give me a fair opportunity to be heard in front of this Board, which I find almost incredible to even be before you in the first place.

Instead of granting Ms. Lea's request for a continuance, the hearing committee asked her to participate by telephone, to which she reluctantly agreed.[5] The hearing then proceeded in two phases: an evidentiary phase followed by a sanctions phase. Ms. Lea made an opening statement in which she admitted that she did not comply with Bar Counsel's written request for a response to the Rule 11 order and disciplinary charges, but she said that her inaction was due to personal reasons, which she later described during the sanctions phase.

During the Assistant Bar Counsel's direct examination of Ms. Lea, she admitted that she "did at some point see the letter [from Bar Counsel] dated June 21st."[6] She said she was not sure when she received the letter because the Pennsylvania address was that of her mother's home, and she "happened to be visiting [her] mother" sometime after June 21 when she first saw the letter. Once she did receive it, however, she responded immediately by calling Ms. Kello and "attempt[ing] to explain the situation." Ms. Lea conceded that Ms. Kello asked her to respond in writing and that she agreed to do so.

Ms. Lea recounted another conversation with Ms. Kello "regarding her failure to serve me, and I offered my mother's address as a place of service." She testified, however, that "after I offered my mother's address and gave my mother direction as to receipt of any mail correspondence that came from Bar Counsel in my mail, there were no more rejections or unclaimed documents regarding this matter from that address. Ms. Kello ... simply chose to use publication as the way to do this [even though I] told her that we would accept any service that came to us at [the Pennsylvania address] ... from Bar Counsel."

Ms. Lea admitted that she was aware of the Specification of Charges against her, but she would not admit having received it. She did not recall the February 2003 telephone conversation in which she asked Ms. Kello for a copy of the Specification of Charges, but she did not deny that such a conversation took place. She stated that while she had not filed a written response "to any documents presented to [her] by Bar Counsel," including the Specification of Charges, she had "responded by way of telephone." However, she did not testify as to the substance of these responses.

Ms. Lea blamed her unresponsiveness mainly on the fact that she did not have a fixed address. When she moved away from the District of Columbia, she did not update her address of record with the Bar because she was not living in the immediate area and because she thought that her license was suspended for failure to pay dues. She said that in 2001 she was either in Indianapolis, Philadelphia, or Monessen, Pennsylvania. When asked whether she stayed in the Washington area after she left the address at 4410 Massachusetts Avenue, she replied, "I don't know the time

---

**5.** When the chairman asked her if she was "able to participate by telephone today," Ms. Lea responded:

> I do believe a personal appearance would work better, but if that is the only other option, then I'll go with that, rather than not appearing at all.

**6.** As stated above, this letter, dated June 21, 2002, was the fourth letter sent by Bar Counsel to Ms. Lea and the second letter sent to the Pennsylvania address.

period that I left that address ... so I can't answer follow-up questions as to where I was if I don't know when I left."[7]

Ms. Lea testified that she gave Bar Counsel her mother's address in Pennsylvania "because I would tell my mother to accept it, but I did not reside there permanently." At the time of the hearing, Ms. Lea's address was in a residential area of Washington, D.C. In her closing argument, she stated that she was "unable to provide written responses because [she] had no means to do that at that time," but that "I am now fully stable and prepared, and so I ask for some leniency, because, in fact, if you go strictly by the book and the black letter of the law, I did not conform."

After the hearing committee made a "preliminary, non-binding determination that at least one Rule ha[d] been violated," the committee turned to the sanctions phase of the hearing. Ms. Lea was permitted to introduce evidence of mitigating circumstances. She stated:

> Over the past four years of my life, I have been very much displaced and suffering financial detriment, which was basically instigated by the base, the foundation case that the Bar Counsel was investigating in this matter. It is a sore spot for me, very disturbing, and then this was unbelievable to me that I was being brought before the Bar Counsel on this matter. Not to get into the foundation of the case or anything, but it was a case that I was a plaintiff in, that actually called for me to reassess my career choice, because I thought that it was a travesty of justice and basically am still in awe of the outcome of that case with respect to how I was handled in that matter.

She also testified about a traumatic event in her life that occurred soon after one of her conversations with Bar Counsel. Her daughter's father was the victim of a violent robbery, and he was found dead after having been missing for a week. Ms. Lea said that, as a result of this event, other than caring for her daughter, she was unable to prioritize her obligations. She went to Philadelphia to visit a friend and to get counseling. At about the same time, she contracted a blood disease for which she was hospitalized and received transfusions. These things, she said, "took priority over me finding a computer and a setup to respond to the written responses, once I did get them from Bar Counsel." She further testified that she was "now fully prepared to devote whatever time is necessary ... to respond to any requests...."

When a committee member asked her whether she was ready to "move forward," Ms. Lea answered, "Absolutely. I'm very prepared to move forward. I have a computer. I have an office set up in my home." As of the date of the hearing, she said, she had been living in the District of Columbia for "a year, a year-plus," and had owned a computer for approximately a week. Replying to another question, she said she had not submitted a handwritten response to the charges because she did not consider that to be "professional."

## C. The Hearing Committee's Report and Recommendation

In its report and recommendation to the Board, the hearing committee found that Ms. Lea was not credible when she claimed to have cooperated with Bar Counsel and when she stated that no mail came to her mother's house once she gave Bar Counsel her mother's Pennsylvania address.[8] Rather, the committee found

7. See note 2, supra.

8. Specifically, the committee found "untenable" her assertions that she cooperated with

that Ms. Lea "took affirmative steps that interfered with the disciplinary proceedings by repeatedly evading service." It noted that none of the certified letters sent to the Pennsylvania address were accepted, despite Ms. Lea's awareness of Bar Counsel's efforts to contact her. The committee also found that, contrary to her assertions, Ms. Lea had the ability to respond to the Rule 11 order by using either her prior employer's "business facilities" or another person's computer ("she testified that she could have used someone else's computer had she made the effort to do so"). In addition, the committee found that Ms. Lea "lack[ed] both contrition and an appreciation of the seriousness of her misconduct," referring to her comments regarding the Rule 11 sanctions, her failure to prepare for the hearing, her failure "to appear at either of the scheduled times," and her admission that she had scheduled another appointment for 12:30 p.m. on the hearing date. The committee was also troubled by Ms. Lea's continued failure to respond to Bar Counsel's inquiries, even after she testified at the hearing that she was prepared to "move forward," and her failure to inform Bar Counsel prior to the hearing that she had moved back to the District of Columbia. With respect to her testimony about her personal hardships, the committee found that such evidence might be mitigating if Ms. Lea had shown "the chronological relationship between these unfortunate events and

her non-cooperation, and if her period of non-cooperation had been relatively short. But this is not that case."

After finding that Ms. Lea had violated Rule 8.1(b), Rule 8.4(d), and Rule XI, § 2(b)(3), the committee recommended the imposition of a fitness requirement. It concluded that her overall failure to respond to Bar Counsel's inquiries, the repetitive nature of her non-cooperation, and her failure to recognize the seriousness of her misconduct required that Ms. Lea "prove fitness before she can be reinstated to the practice of law." The committee added that "[h]er history as a scofflaw, actively avoiding service, the length of time and the number of requests made by Bar Counsel ... and her failure to appreciate the seriousness of her ethical obligations combine to raise a substantial doubt that her future conduct will be any better." [9]

The Board adopted the hearing committee's recommendations, with one exception. The Board declined to recommend that Ms. Lea demonstrate fitness to practice law as a condition of reinstatement, and adheres to that position in its brief. Bar Counsel, on the other hand, urges us to follow the recommendation of the hearing committee and to require a showing of fitness.

## II

Before this court the Board contends that Ms. Lea's reinstatement should not be

---

Bar Counsel's attempts to communicate with her. It found instead that Ms. Lea "failed to claim or refused to accept every document sent to her by certified mail long after she had told Bar Counsel to send material to the Pennsylvania address." In addition, referring to her explanation of her reasons for failing to submit a handwritten response, the committee found it "inherently incredible that [Ms. Lea] could have believed that it was better to breach substantive professional and ethical duties, rather than risk an unprofessional appearance," and that, "given [Ms. Lea's] con-

duct in this matter from start to finish, we do not credit her explanation that she acted out of concern for her professional appearance."

9. Indeed, the committee did not mince words, finding this to be "a truly egregious case, in which a Respondent has managed to stonewall the disciplinary system for 3½ years. She evinces no sense of responsibility to account for the conduct called into question by the underlying complaint."

conditioned upon a fitness requirement. In the Board's view, a fitness requirement is not an appropriate sanction under *In re Cater*, 887 A.2d 1 (D.C.2005), in which we adopted a three-part test for deciding whether a showing of fitness should be required when an attorney has failed to cooperate in a disciplinary investigation. We disagree with the Board and hold that the hearing committee's recommendation of a fitness requirement in this case is consistent with the *Cater* holding.

### A. *Standard of Review*

■■■ Under the Board's own Rule of Procedure 13.7, "[w]hen reviewing the findings of a Hearing Committee, the Board shall employ a 'substantial evidence on the record as a whole' test." This is consistent with our own case law: "The Board is obliged to accept the hearing committee's factual findings if those findings are supported by substantial evidence in the record, viewed as a whole." *In re Micheel*, 610 A.2d 231, 234 (D.C.1992); *see also In re Godette*, 919 A.2d 1157, 1164 (D.C.2007) ("*Godette I*") (Board must "defer to the Committee's factual findings and view the record in the light most favorable to those findings"). However, while the Board "must defer to the subsidiary findings of basic facts, which include such things as credibility determinations," made by the hearing committee, "the Board owes no deference to the hearing committee's determination of ultimate facts, which are really conclusions of law." *Micheel*, 610 A.2d at 234 (internal quotation marks omitted); *see also In re Temple*, 629 A.2d 1203, 1208 (D.C.1993).

■■■ Under D.C. Bar Rule XI, § 9(g)(1), this court is required to "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." However, despite the deference we give to the Board, "the responsibility for imposing sanctions rests with this court in the first instance.'" *Godette I*, 919 A.2d at 1164 (quoting *Temple*, 629 A.2d at 1207). "In other words, 'the buck stops here.'" *Id.* (quoting *In re Shillaire*, 549 A.2d 336, 342 (D.C.1988)). "The Board's final determinations, whether they are characterized as findings of ultimate fact or conclusions of law, are owed no deference; our review is *de novo*." *In re De Maio*, 893 A.2d 583, 585 (D.C.2006).

### B. *The* Cater *Factors*

■■■ Under D.C. Bar Rule XI, § 3(a)(2), "[a]ny order of suspension may include a requirement that the attorney furnish proof of rehabilitation as a condition of reinstatement. In the absence of such a requirement, the attorney may resume practice at the end of the period of suspension without further order of the Court." However, if the court elects to impose a fitness requirement, the attorney may not resume the practice of law without first making an affirmative showing of fitness. "[T]he open-ended fitness requirement is intended to be an appropriate response to serious concerns about whether the attorney will act ethically and competently in the future, after the period of suspension has run." *Cater*, 887 A.2d at 22.

■■■ In *Cater* this court held that when a fitness requirement is being sought or considered, Bar Counsel must establish by clear and convincing evidence that a "serious doubt" exists as to the attorney's fitness to practice law. *Id.* at 24. We listed three factors that are "relevant" in a case such as this, in which an attorney "has failed to participate in the disciplinary

inquiry," in determining whether there is such a serious doubt: "(1) the respondent's level of cooperation in the pending proceeding(s), (2) the repetitive nature of the respondent's lack of cooperation in disciplinary proceedings, and (3) 'other evidence that may reflect on fitness.'" *Id.* at 25–26 (quoting Board Report).[10] We conclude that in the present case the Board misapplied the *Cater* factors because it failed to consider the committee's findings of basic facts, which were supported by substantial evidence.

### 1. *Respondent's level of cooperation*

The Board argues that the first *Cater* factor weighs against the imposition of a fitness requirement because during the investigation Ms. Lea telephoned Bar Counsel, provided Bar Counsel with the Pennsylvania address, and testified at the hearing. We find it difficult to regard Ms. Lea's telephone calls as cooperative efforts when, during the call on September 18, 2001, she promised to file a response but then failed to do so, and when, during the call on February 4, 2003, she refused to give Bar Counsel an address at which she could be personally served. Similarly, the hearing committee was not required to credit Ms. Lea for giving Bar Counsel her mother's address in Pennsylvania because she either ignored the mail sent to that address or failed to ensure that it reached her in a timely manner. Moreover, although Ms. Lea participated in the disciplinary hearing by telephone, her level of participation is undercut by the hearing committee's credibility findings, which we shall discuss more fully later in this opinion. Indeed, the committee discredited any testimony which suggested that Ms. Lea intended or tried to cooperate with Bar Counsel. Moreover, as far as the record shows, Ms. Lea has

never responded substantively to Bar Counsel's underlying complaint, which was based on the Superior Court's Rule 11 sanction.

### 2. *The repetitive nature of respondent's lack of cooperation*

In its discussion of the second *Cater* factor, the Board argues in its brief that "repeated" misconduct "usually refers to a failure to respond to more than one disciplinary complaint." Therefore, the Board maintains that because this was Ms. Lea's first disciplinary infraction, she did not demonstrate "the kind of 'indifference or worse' toward the disciplinary process that would warrant a fitness requirement under the second *Cater* factor" (quoting Board Report). *Godette I* demonstrates, however, that a repeated failure to respond to a single disciplinary complaint may be considered when determining whether to impose a fitness requirement. In that case we held that "[e]ven in a single investigation, an attorney's disregard for the disciplinary process may be so repeated, deliberate, and prolonged that a requirement to prove fitness is entirely justified." *Godette I*, 919 A.2d at 1167. Here, because of Ms. Lea's repeated failure to cooperate, Bar Counsel mailed at least five letters asking for her response to the complaint; the Board ordered her to respond; a process server was unable to effect personal service after numerous attempts; Bar Counsel finally had to resort to service by publication; and almost four years elapsed before the committee could hold a hearing on the disciplinary complaint. Thus, as a matter of law, we reject the Board's assertion that because this is Ms. Lea's first disciplinary infraction, a fitness requirement is not justified. We conclude instead that the Board should have given weight

---

**10.** These three factors were proposed by the Board in *Cater,* and we adopted them.

to Ms. Lea's repeated failure to respond to the complaint.[11]

### 3. Other evidence reflecting on fitness: Deliberate disregard for the disciplinary process

■ In *Cater* we stated that "[t]he relevance of the first two factors is undeniable, and the catchall third factor ensures that any other relevant facts will be taken into account." 887 A.2d at 26. Relevant to the imposition of a fitness requirement is any evidence that the respondent "evinces deliberate disregard for the disciplinary process in violation of [Rule of Professional Conduct] 8.4(d) and [D.C. Bar Rule] XI, § 2(b)(3)." *In re Delaney*, 697 A.2d 1212, 1214 (D.C.1997). "In and of itself, such behavior raises a serious question about the attorney's continuing capacity and willingness to fulfill his or her professional obligations." *Cater*, 887 A.2d at 25. We conclude that the Board, in applying the third *Cater* factor, failed to give sufficient consideration to the committee's findings regarding Ms. Lea's deliberate disregard for the disciplinary process, namely, its findings that Ms. Lea had deliberately evaded service and that her testimony was not credible.

■ Evidence showing evasion of service "is one type of evidence that tends to demonstrate deliberate disregard for the disciplinary process." *Godette I*, 919 A.2d at 1166. Whether Ms. Lea deliberately evaded service is a question "of basic, or evidentiary, fact; it is not a conclusion of law." *Id.* at 1164. Here the committee found that Ms. Lea "took affirmative steps to interfere with the disciplinary proceedings by repeatedly evading service." The

Board rejected this finding of evasion because of what it perceived as the absence of substantial evidence supporting it. Furthermore, the Board maintains that the evidence at the hearing demonstrated that Ms. Lea was not evading service because she testified that she gave Bar Counsel the Pennsylvania address as one where she could be reached and at which she could be served.

This court held in *Godette I* that "ample evidence" supported the hearing committee's factual determination that the respondent deliberately evaded service. *Id.* at 1165. This "ample evidence" included the unsuccessful efforts by Bar Counsel to persuade the respondent to respond to the underlying complaint; a telephone message from the respondent to Bar Counsel, promising to submit a response within three days, which was followed by his failure to submit a response; and the unsuccessful attempts by a process server to serve the respondent with the Specification of Charges. The Board in *Godette I* discounted such evidence, particularly an affidavit in which a process server stated that he knocked on the respondent's door and could hear noises inside, but that no one answered the door. In the Board's view, the affidavit did not take the place of a live witness, and the assertions in it did not establish that the respondent had in fact been at home when the process server knocked and had intentionally failed to open the door. We stated that the Board's "duty to defer to the findings of the trier of fact is obviously at its zenith where that trier of fact had the opportunity to hear the testimony and observe the demeanor of the witness." *Id.* at 1164. However, we also stated that the clearly erroneous stan-

---

11. We note that while the Board analyzed Ms. Lea's repeated failure to respond to the complaint under the second *Cater* factor, we discussed the issue in the context of *Cater's* "catchall third factor" in *Godette I*, 919 A.2d

at 1167. Since the Board ultimately must apply a "substantial evidence on the record as a whole" test, we need not decide which *Cater* factor applies to this particular issue.

dard applied to the Board's review of the hearing committee's findings just as it "applies to review of all factual findings, whether they are based on oral or on documentary evidence." *Id.* We ultimately concluded that substantial evidence, including the affidavit, supported "a finding, by clear and convincing evidence, that as part of his extended and consistent refusal to cooperate in any way in the disciplinary process, [the respondent], *inter alia,* deliberately avoided service of process." *Id.* at 1166.[12]

In this case, despite the fact that Bar Counsel could not in fact reach or serve Ms. Lea at the Pennsylvania address, counsel for the Board suggested at oral argument that Ms. Lea's repeated "avoidance" in this case was distinguishable from the "deliberate evasion" in *Godette I.* We fail to see the distinction, and accordingly we hold that here, as in *Godette I,* the record as a whole supports a finding that Ms. Lea deliberately evaded service of the disciplinary complaint.

Ms. Lea evaded service by failing to take the necessary steps to ensure that the mailings from Bar Counsel reached her in a timely manner. The letter dated February 5, 2003, demonstrates that Ms. Lea refused to give Bar Counsel an alternate address at which she could be personally served, even though she was aware that Bar Counsel was having difficulty in trying to serve her. In addition, while the process server's affidavit indicates that service was attempted at a Baltimore address,

which apparently was not Ms. Lea's address, the affidavit also indicates that "several" attempts were made at the Pennsylvania address which Ms. Lea gave to Bar Counsel.

D.C. Bar Rule II, § 2(1), directs every attorney in the District to file with the Bar "a registration statement setting forth his or her current residence and office address" and to file a supplement within thirty days if his or her contact information changes. Ms. Lea's address in the District of Columbia was not current when Bar Counsel first attempted to contact her. Eventually, she provided her mother's address in Pennsylvania, but Bar Counsel's certified letters were not accepted at that address. When other letters were sent by regular mail, Ms. Lea either did not receive them in a timely fashion or simply failed to respond. Pursuant to her duty to supply Bar Counsel with a current address, Ms. Lea should have taken the necessary steps to ensure that she was receiving mail at the address which she gave to Bar Counsel; otherwise, as the record confirms, the address she gave was not a sufficient address for her and was not in compliance with Rule II, § 2(1).

By failing to take such steps, Ms. Lea could be compared to someone, like the respondent in *Godette,* who hides outright from a process server. That appears to be exactly what Ms. Lea was doing, or at least the hearing committee could reasonably draw such an inference. Indeed, the

---

12. In *Godette I* we remanded the case to the Board "so that on the basis of a factual predicate consistent with [our] opinion, it may reconsider whether, as a further condition of reinstatement, Godette should be required to prove his fitness to practice law." 919 A.2d at 1159. On remand the Board adhered to its original recommendation—a thirty-day suspension, with a requirement that Mr. Godette respond to the underlying ethical complaint and that he take a six-hour continuing legal education course in ethics and professional responsibility. In addition, however, the Board recommended that we impose a time limit of ninety days within which Mr. Godette had to respond to the ethical complaint; failing that, he would be required to demonstrate his fitness to practice law. When the case came back to this court, we accepted the Board's modified recommendation, albeit "[w]ith some misgivings...." *In re Godette,* 959 A.2d 61, 62 (D.C.2008) (*"Godette II"*).

record reflects, and the hearing committee found, that Ms. Lea was again residing in the District of Columbia for a year prior to the hearing without informing Bar Counsel of her presence.

Our holding in *Godette II* does not require us to accept the Board's recommendation in this case. The Board in *Godette II*, purporting to follow *Cater*, "found that Godette had not repeatedly evinced indifference (or worse) toward our disciplinary procedures." 959 A.2d at 62 (citing *Cater*, 887 A.2d at 25 (internal quotation marks omitted)). The Board "speculated that Godette's failure to respond [to the complaint] and his evasion of service were more likely motivated by 'hopelessness and perhaps despair,' rather than indifference." *Godette II*, 959 A.2d at 62 (quoting Board Report). We found the Board's reasoning deficient:

> There is no doubt that the Board followed our instructions grudgingly. The excuses its posits for Godette's failure to respond are merely hypothetical and unsupported by any input from Godette himself.

*Id.* at 63. Nevertheless, we acceded to the Board's revised recommendation and did not require a showing of fitness, "recogniz[ing], as the Board did, that there is a spectrum of conduct that constitutes evading service of process. Perhaps Godette's failure to answer the door is not as egregious as 'deceiving the process server or in any way mistreating him.'" *Id.* (quoting Board Report). What we found "most significant[ ]" was the fact that the Board had "significantly modified its recommendation to include a 'time limit on [Godette's] exercise of the right to end the suspension by responding to Bar Counsel's letters.'" *Id.*

(quoting Board Report). The case at bar is different. Here we have "input" from the respondent which was lacking in *Godette*. Ms. Lea testified at some length by telephone, but the hearing committee did not credit what she had to say. Since the committee's credibility findings were not clearly erroneous, the Board was bound to accept them. There is no room here for the Board to "speculate" that Ms. Lea's evasion of service, like that of Mr. Godette, may have been motivated by "hopelessness and perhaps despair."

In addition to the evidence of evasion of service, the Board also failed to consider other evidence of Ms. Lea's deliberate disregard for the disciplinary process. In particular, given that substantial evidence supported the committee's credibility findings,[13] the Board erred in failing to accept those findings. *See Temple*, 629 A.2d at 1208–1209 (holding that as long as the findings are supported by substantial evidence, the Board must defer to the hearing committee's credibility determinations because they are "subsidiary findings of basic facts"). The committee found that Ms. Lea's testimony, tone, and behavior demonstrated a lack of contrition or appreciation for the seriousness of her conduct. The Board argues, however, that Ms. Lea's testimony demonstrated that she suffered from a "mental block" regarding the Rule 11 order, not a lack of contrition or appreciation for the seriousness of the matter, and that this block "does not translate to an inability to practice law." The Board also asserts that the committee did not make "true credibility findings" because Ms. Lea participated in the hearing only by telephone, and that the com-

---

13. Such evidence included, among other things, Ms. Lea's testimony that her lack of computer access prevented her from responding to the complaint, her assertion that the Rule 11 order was "a travesty of justice," and her tardiness and ultimate failure to appear in person at the hearing.

mittee therefore could not directly observe her demeanor.

 The Board appears to overlook the fact that Ms. Lea was not physically present at the hearing because, as she admitted, she overslept and had another appointment scheduled for 12:30 p.m. that same day. The hearing committee was free to draw from such behavior reasonable conclusions about her appreciation of the seriousness of the disciplinary process; in other words, her absence was itself an evidentiary fact that the committee could properly consider. It is of course true that the hearing committee's ability to make credibility determinations is "at its zenith" when the witness is physically present. Nevertheless, regardless of whether the evidence at the hearing consists of face-to-face testimony, testimony by telephone, or something else (*e.g.*, a deposition or an affidavit), the Board can disregard the committee's factual findings only if they are clearly erroneous, and in this case they are not. *See Godette I*, 919 A.2d at 1164. We are satisfied that in light of Ms. Lea's testimony, her conduct on the day of the hearing, and her entire history of unresponsiveness, there was substantial evidence supporting the hearing committee's finding that Ms. Lea did not appreciate the seriousness of the disciplinary process. Therefore, the committee's credibility findings were not clearly erroneous and should have been accepted by the Board.

14. *Cater*, 887 A.2d at 24.

15. Rule XI, § 3(a)(2) provides in part: "Any order of suspension may include a require-

## III

Given the evidence in the record as a whole, which supports the hearing committee's conclusion that a fitness requirement should be imposed, we have "serious doubt"[14] that Ms. Lea can deal with her ethical responsibilities in her law practice at the end of her prescribed period of suspension. The evidence in this regard is clear and convincing. Accordingly, it is

ORDERED that Terri Y. Lea is suspended from the practice of law in the District of Columbia for a period of thirty days, in accordance with D.C. Bar Rule XI, § 14(f). It is

FURTHER ORDERED that, as conditions of reinstatement, Ms. Lea shall be required (1) to prove fitness pursuant to D.C. Bar Rule XI, § 3(a)(2),[15] and (2) to respond promptly to the inquiries of Bar Counsel and the order of the Board pertaining to the underlying disciplinary proceeding against her, if she has not already done so as of the date of this opinion.

In addition, we direct Ms. Lea's attention to the provisions of D.C. Bar Rule XI, §§ 14(g) and 16(c), and their effect on her eligibility for reinstatement.

ment that the attorney furnish proof of rehabilitation as a condition of reinstatement."